UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gamada A. Hussein, | Case No. 0:19-cv-02058-JRT-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Office of Inspector General Central Intelligence Agency; Central Intelligence Agency Privacy and Civil Liberties Officer; and John Does; | |
| Defendants. | |

This matter is before the Court on Gamada A. Hussein's motion for a preliminary injunction, which has been referred for a report and recommendation. [Pl.'s Mot., ECF No. 6.] For the reasons that follow, the Court recommends that the motion for preliminary injunction be denied and that this case be dismissed because Mr. Hussein's allegations are frivolous.

**I.   Factual Background**

Before turning to the undersigned's recommendation, it is important that the Court discuss the nature of the allegations in Mr. Hussein's complaint. On July 31, 2019, Mr. Hussein filed his pro se civil rights complaint in this csae, which is 177 pages long and is accompanied by 66 pages of exhibits. It is quite difficult to piece together a single, coherent narrative out of Mr. Hussein's lengthy complaint. He weaves together seemingly disparate events and accusations of wrongdoing by private citizens and unidentified government actors as part of an alleged campaign against him based on

several of his identifying characteristics. Because Mr. Hussein is a pro se plaintiff, the Court has endeavored to read his complaint liberally.

### *Plaintiff's Allegations*

Mr. Hussein claims that for more than a decade he has been subjected to "discriminatory harassments, mental and psychological torture, drug and software assaults, oppressions, enslavement, persecutions, state terrorism, abuses, intimidation, invasion of privacy, defamation, attempted assassinations, control of wealth and mind, [and] poisoning and unlawful surveillance actions." [Compl. at 2, ECF No. 1.] He alleges that the defendants engaged in these actions because of his race, his religion, the color of his skin, his ethnicity, his national origin, and other factors, in violation of his federal constitutional rights and his rights under Minnesota law. [*Id.* at 2–3.] Mr. Hussein claims that the motivation behind these actions was to prevent him from returning to Ethiopia and making changes to the situation there without CIA approval.

Mr. Hussein noticed he was being followed and surveilled by what he determined were undercover FBI, CIA, and local law enforcement agents following a work-related accident on March 20, 2008, which resulted in his hospitalization. [*Id.* ¶ 18.] He was similarly subjected to surveillance when he was taken to Hennepin County Medical Center following a car accident in May of 2010. [*Id.* ¶ 24.] In the aftermath of both incidents, he experienced harassment by coworkers at the many temporary job-postings he held and claims that these events were attributable to the constant surveillance he experienced at the hands of the defendants and other undercover government agents. The

defendants also allegedly surveilled him and acted against his interests at a number of coffee shops and restaurants.

Mr. Hussein claims that the defendants: confined him in a "digital prison" since 2008 without probable cause; attempted to poison him on several occasions; used software and drugs to control his mind, erase his memory, and cause him to feel depressed or have social anxiety; engaged in witchcraft to deceive him; interfered with his personal and sexual relationship with his fiancé; deprived him of sexual desire or made that desire excessive; caused his medical providers to make false diagnoses of paranoia and delusional disorders; and deprived him of vast sums of money he asserts the United States government was prepared to pay him. He claims that FBI undercover agents attempted to assassinate him using a "laser light" and took samples and information from his medical appointments to use against him. He also alleges that President Donald Trump encouraged the defendants' mistreatment of him and "tried to terrorize [him] by showing national security team meeting…."

*Identified Claims*

Mr. Hussein's complaint contains the following sixteen claims for relief. Claim I is for violations of the Fourth Amendment based on the defendants allegedly: taking his wallet; controlling his electronic devices; controlling his behavior through implantation of chips in his body; searching and reading his mind; and selling his personal property. In Claim II he alleges a "Violation of U.S.C. § 552(a)" based on the defendants' alleged unlawful disclosure of his personal records. Claim XIV is similarly for a violation of the Freedom of Information Act, 5 U.S.C. § 552, based on the defendants sharing

information regarding Mr. Hussein with his coworkers, teachers, proctors, and the general public. The defendants allegedly failed to release these records to Mr. Hussein during prior proceedings and upon demand.

Claim III is a discrimination claim under 42 U.S.C. § 1981, asserting that the defendants have caused him to lose six professional jobs in the last ten years because of his race, color, ethnicity, and national origin. He claims these actions deprived him of his right to enter contracts.

In Claim IV, Mr. Hussein alleges violation of 42 U.S.C. § 1983 based on the Fourth and Fourteenth Amendments. He claims he was subjected to intentional discrimination by the defendants during his visit to HCMC in May of 2010 and later when his wallet was seized at a public library in Missouri. Claim V asserts a violation of the Fifth Amendment and the First Amendment based on the defendants' preventing him from expressing political opinions and freely practicing his religion. In Claim VI, Mr. Hussein asserts violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985, again for the defendants' alleged free speech violations. Claim VII is for a violation of 18 U.S.C. § 1708 when the defendants allegedly took his mail from the United States Postal Service, opened it, and sent it to his workplaces.

Mr. Hussein's complaint contains several state-law tort claims. In Claim VIII, Mr. Hussein alleges that the defendants are liable for battery as a result of poisonings, assaulting him with drugs and software, and flushing intense light into his eyes. Claim IX(A) asserts an invasion of privacy claim, "intrusion upon solitude and private affairs." This claim is based on the defendants' alleged round-the-clock surveillance of

Mr. Hussein. Claim IX(B) is a "false light" claim in which Mr. Hussein alleges that the defendants publicly disclosed misleading information about him suggesting that he is anti-America, a potential terrorist, and "mentally sick." Claim X is a defamation claim that is very similar to the "false light" claim. Claim XI is for intentional infliction of emotional distress.

In Claim XII, Mr. Hussein alleges that the defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment by subjecting him to torture. In Claim XIII, he asserts that the defendants violated his Fifth Amendment rights by falsely imprisoning him without due process of law. Both of these claims reference microchips the defendants allegedly inserted into Mr. Hussein's body.

Count XV, which Mr. Hussein titles "Hate Crimes," is based on "The Violent Crime Control and Law Enforcement Act, enacted in 28 U.S.C. § 994 note Sec. 280003." He asserts that the defendants are liable for "infecting [him] with fungus, assaulting him with drugs and software, and assigning him disease to lower visibility in order to deter others (specially per assumptions white girls and white woman would like or date plaintiff) from socializing with him just because plaintiff is black, has black skin, Muslim, has Muslim name, and [is] originally an immigrant from [a] poor country (Ehtipopia)…." Claim XVI is for a violation of the Thirteenth Amendment.

In sum, Mr. Hussein asks the Court to declare the defendants' actions violate various provisions of the United States and Minnesota Constitutions and several state and federal statutes. He seeks a permanent injunction, compensatory damages, and various other forms of relief.

### *References to Other Litigation*

At various points in his complaint, Mr. Hussein references materials he has submitted in other cases filed in this District. For example, he refers to documents filed in *Hussein v. U.S. Dep't of Justice, et al.*, 16-cv-780 (SRN/SER) ("*Hussein I*"); *Hussein v. U.S. Dep't of Justice, et al.*, No. 19-cv-292 (JRT/HB) ("*Hussein II*"); *Hussein v. Trump, et al.*, No. 19-cv-1718 (ECT/BRT) ("*Hussein III*"); and *Hussein v. Minnesota, et al.*, No. 19-cv-1913 (DSD/TNL) ("*Hussein IV*").

In *Hussein II*, Chief Judge John R. Tunheim recently issued an Order adopting Magistrate Judge Hildy Bowbeer's Recommendation that Mr. Hussein's complaint be dismissed and that restrictions be imposed on future filings by Mr. Hussein. No. 19-cv-292, Doc. 37. Judge Tunheim summarized Mr. Hussein's claims in that case as follows:

> Hussein alleges that he is the victim of persecution and torture at the hands of a variety of government actors. In his lengthy complaint, Hussein alleges that undercover government agents tracked him and interfered in his personal life; that coworkers attempted to poison him and inject him with pathogens; that he was subjected to radiation and assassination attempts; and other harms.

*Id.*, Doc. 37 at 2 (cleaned up). Judge Tunheim found that the allegations in that case were substantially similar to those filed in *Hussein I*, which had been dismissed in part for lack of jurisdiction and for failure to state a claim. *Id.*, Doc. 37 at 2–3. In particular, Judge Tunheim found that although the claims in *Hussein I* had been dismissed because they were "highly speculative, conclusory, and not grounded in fact," Mr. Hussein had failed to "remedy any of the pleading deficiencies … noted by the Court in *Hussein I*." *Id.*,

6

Doc. 37 at 5–6.[1] Finally, Judge Tunheim's Order provides that "Mr. Hussein may not file anything, including but not limited to new lawsuits, or motions and other papers in pending cases, in the District of Minnesota unless he is represented by counsel or obtains prior court approval." *Id.*, Doc. 37 at 8.

On October 7, 2019, in *Hussein III*, United States District Judge Eric Tostrud issued an Order dismissing Mr. Hussein's complaint. No. 19-cv-1718, Doc. 17. Judge Tostrud noted that Mr. Hussein:

> sued President Donald J. Trump and an unknown number of John Does for a large number of alleged wrongs including mind control through administration of various drugs, witchcraft, and through some type of technology implanted in Hussein's body; sexual degradation and enslavement; infecting him with a toxic fungus, and other forms of wrongful interference in Hussein's life…. These wholly insubstantial and frivolous claims bear a strong resemblance to those at issue in numerous other filing in this District, and which have caused Chief Judge John R. Tunheim to place Hussein on a list of individuals not permitted to file anything with the Court without prior authorization.

*Id.*, Doc. 17 at 1–2. Judge Tostrud found that Mr. Hussein's claims in *Hussein III* fit within a narrow jurisdictional exception recognized in *Bell v. Hood*, 327 U.S. 678, 681–83 (1946), for cases in which a plaintiff alleges a claim that "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a

---

[1] Judge Bowbeer's Report and Recommendation identified fifteen claims in Mr. Hussein's seventy-one-page Complaint in *Hussein II*. No. 19-cv-292, Doc. 30 at 2–3. Those claims are nearly identical to the claims that Mr. Hussein alleges in this case.

claim is *wholly insubstantial and frivolous.*" *Hussein III*, No. 19-cv-1718, Doc. 17 at 1, 2.[2]

## II.     Motion for Preliminary Injunction

In support of his motion for preliminary injunction, Mr. Hussein largely repeats the allegations in his Complaint. He asserts that he has been "tortured, persecuted, oppressed, enslaved, assaulted, discriminated against, threatened, poisoned, harassed, intimidated, invaded, and subjected to the most notorious, abusive, oppressive, intrusive, and unlawful surveillance." [Pl.'s Mot. at 3–4.] He and members of his family are citizens of the United States and practicing Muslims. Among other things, he asserts that the defendants have: used software to prevent him from eating and cause him to have suicidal thoughts; engaged in mind reading and mind control efforts; interfered with his sex life; erased his memory; deterred him from practicing his religion; sold his property; experimented on him and the members of his family unlawfully. [Pl.'s Mot. at 3–15.] In support of his motion, Mr. Hussein has attached certain photographs, copies of emails he apparently sent, and copies of several police reports. [Pl.'s Exs. ECF No. 7.]

A motion for a preliminary injunction may be granted where the moving part shows: (1) probability of success on the merits; (2) the threat of irreparable harm; (3) that the balance weighs more toward preventing such harm than it does toward the injury that granting the injunction will inflict on other interested parties; and (4) that the public

---

[2]     No ruling has been issued in *Hussein IV* as of the date of this Report and Recommendation.

8

interest will be served by issuing the injunction. *See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Where there is "no chance of success on the merits" an injunction cannot be issued. *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005).

Mr. Hussein does not have a likelihood of succeeding on the merits of his claims in this case. His allegations are substantially similar (if not identical) to claims in at least *Hussein I*, *Hussein II*, and *Hussein III*, all of which have been dismissed because the courts have found them to be frivolous or wholly insubstantial. This Court finds the same. Accordingly, the Court recommends that his motion for a preliminary injunction be denied on this basis without the need to consider the other *Dataphase* factors. *See Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 233 (8th Cir. 2008) (finding that because the plaintiff "failed to show any likelihood of success on the merits… it [is] unnecessary to assess the remaining factors for injunctive relief").

### III.   Frivolous Complaint

As noted, Mr. Hussein's Complaint here is substantially similar to those he has filed in multiple other lawsuits in this District. This Court finds that Mr. Hussein's allegations in this case are almost entirely conclusory and are not grounded in fact. In light of the findings and dispositions in *Hussein I*, *Hussein II*, and *Hussein III*, and especially given that Chief Judge Tunheim has now placed Mr. Hussein on a list of restricted filers, this Court concludes that Mr. Hussein's allegations here are "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. at 681–83. Accordingly, just as Judge Tostrud found in *Hussein III*, this case fits within the narrow exception to federal subject

9

matter jurisdiction for complaints setting forth only wholly insubstantial and frivolous claims and this matter should be dismissed without prejudice.[3]

### Recommendation

Based on the foregoing, the Court makes the following recommendations:

1. Mr. Hussein's Motion for Preliminary Injunction **[ECF No. 6]** should be **DENIED**;

2. Mr. Hussein's Motion for Summary Judgment **[ECF No. 10]** should be **DENIED**; and

3. This matter should be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction pursuant to *Bell v. Hood*, 327 U.S. 678 (1946).

Date: October 24, 2019                            *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this

---

[3] Based on this recommendation, the Court also recommends that Mr. Hussein's motion for summary judgment be denied. [ECF No. 10.]

Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.